IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

SCOTT D. H.,

            Plaintiff,

       v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.

_____

Civil Action No.
3:20-CV-0817 (DEP)

APPEARANCES:                           OF COUNSEL:

FOR PLAINTIFF

LAW OFFICES OF KENNETH              JUSTIN M. GOLDSTEIN, ESQ.
  HILLER, PLLC
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226

FOR DEFENDANT

SOCIAL SECURITY ADMIN.              TIMOTHY SEAN BOLEN, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. § 405(g), are cross-motions for judgment on the pleadings.[1]  Oral argument was heard in connection with those motions on October 13, 2021, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1)   Defendant's motion for judgment on the pleadings is GRANTED.

---

[1]      This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2)     The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)     The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:     October 21, 2021
           Syracuse, NY

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
SCOTT H.,

                                        Plaintiff,

-v-                                     3:20-CV-817

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
------------------------------------------------------x


**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE DAVID E. PEEBLES**
October 13, 2021
100 South Clinton Street, Syracuse, New York


For the Plaintiff:
(Appearance by telephone)

    LAW OFFICE OF KENNETH HILLER
    6000 North Bailey Avenue
    Suite 1A
    Amherst, New York 14226
    BY:  **JUSTIN M. GOLDSTEIN, ESQ.**

For the Defendant:
(Appearance by telephone)

    SOCIAL SECURITY ADMINISTRATION
    J.F.K. Federal Building, Room 625
    15 New Sudbury Street
    Boston, Massachusetts 02203
    BY:  **TIMOTHY SEAN BOLEN, ESQ.**


*Hannah F. Cavanaugh, RPR, CRR, CSR, NYACR, NYRCR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York 13261-7367*
*(315) 234-8545*

1                  (The Court and all parties present by telephone.

2   Time noted:  2:33 p.m.)

3                  THE COURT:  Plaintiff has commenced this proceeding

4   pursuant to 42, United States Code, Section 405(g) to challenge

5   an adverse determination by the Commissioner of Social Security

6   finding that he was not disabled at the relevant times and

7   therefore ineligible for the benefits that he sought.

8                  The background is as follows:  Plaintiff was born in

9   April of 1974.  He's currently 47 years old.  He was 41 years

10  old at the alleged onset of his disability on September 25,

11  2015.  Plaintiff lives in a two-story house in the Binghamton,

12  New York area with his longtime girlfriend of 25 years, at least

13  at the time of the hearing, together with one daughter and three

14  dogs.  Plaintiff has two other daughters that do not reside with

15  him.  Plaintiff stands 5'9" or 5'10" in height and has weighed

16  at various times between 180 pounds prior to his accident and

17  280 pounds after.  Plaintiff has an 11th grade education and

18  secured a GED in 2016.

19                 The evidence is equivocal as to whether he was in

20  regular or special education classes.  In the function report,

21  he indicated regular classes, but at the hearing at page 613 he

22  claimed that he was labelled and identified as learning

23  disabled.  He has also undergone some vocational training and

24  was unsuccessful in attempting online college courses.

25  Plaintiff has a driver's license and can drive.

1          Plaintiff stopped working as a result of a motor

2    vehicle accident sustained in April of 2011, although he did try

3    on two or three occasions between 2012 and 2015 to return to

4    work without success.  Plaintiff's work experience is somewhat

5    limited to employment at Frito-Lay where he worked beginning in

6    January of 1998.  While there, he has worked as a packer, a

7    kitchen worker, a tester, and a box drop worker in the factory.

8          The plaintiff suffers from degenerative disc disease

9    of the lumbar area with radiculopathy, obesity, hyperlipidemia,

10   and some throat issues.  He also was involved in a motor vehicle

11   accident, as I indicated, and sustained a left leg fracture.  He

12   also experiences diabetes.  As a result of the motor vehicle

13   accident, plaintiff suffered a back injury.  The plaintiff has

14   had, since the time of the injury, several magnetic resonance

15   imaging testings and X-rays.

16         On October 20, 2011, he underwent MRI testing, which

17   resulted in an impression as follows:  Degenerative endplate

18   changes at L1-L2, posterior disc bulges and small protrusions at

19   L4-L5 and L5-S1, no significant spinal canal or neuroforaminal

20   stenosis, that's at page 376.

21         X-rays of his lumbar area taken on December 7, 2011,

22   revealed some degenerative disc disease of the L5-S1 and L4-L5

23   disc levels and indicated there also appears to be degenerative

24   disc disease at the T12-1 and T11-T12 disc levels.  The report

25   of that X-ray is at 380 and 381 of the Administrative

1   Transcript.

2           On October 22, 2012, MRI testing revealed a prominent

3   epidural lipomatosis at L5-S1.  The impression given was tiny

4   right paracentral disc protrusion at L1-L2, L4-L5 small central

5   disc protrusion, and L5-S1 small central disc protrusion.

6   That's at page 292.

7           On August 31, 2016, X-rays were again taken of

8   plaintiff's lumbosacral spine.  The impression was no

9   significant bony abnormality.  It also reflected the height of

10  the vertical bodies and intervertebral disc spaces as relatively

11  well maintained.  The pedicles are intact.  There is a

12  transitional L5 vertical body.  That's at page 403.

13          X-rays taken on October 7, 2017, resulted in the

14  impression of, "normal exam."  And this is page 575 of the

15  Administrative Transcript.

16          Mentally, plaintiff suffers from depression and

17  anxiety, but has not undergone any specialized treatment by a

18  psychiatrist or psychologist, no hospitalization, and no

19  medications.

20          Plaintiff's general health concerns are taken care of

21  by UHS Medical Group and various professionals in that group.

22  Plaintiff was also seeing Dr. Douglas Taber, a chiropractor,

23  from January of 2013 to April of 2013, at which time he

24  underwent multiple manipulations under anesthesia, or MUAs.  He

25  also has seen Dr. Kamlesh Desai, a back surgeon who he sees as

 1   needed, and sees Dr. Desai one time per year for insurance

 2   purposes.  He also has seen Nurse Practitioner Meghan Laing who

 3   works with him for general concerns, as well as the anxiety.  He

 4   sees Nurse Practitioner Laing also as needed.

 5          In terms of medications, plaintiff has been

 6   prescribed Venlafaxine or Effexor, Advil, Ibuprofen, Tylenol,

 7   and Aleve.  He's had relatively conservative treatment,

 8   including physical therapy, home exercise, heat, and ice.  He

 9   declined to receive injections.

10          His activities of daily living include the ability to

11   shower, dress, groom, and shop.  Plaintiff watches television,

12   socializes, and tinkers with cars.  Plaintiff is not a current

13   smoker.

14          Procedurally, plaintiff applied for Title II benefits

15   on July 5, 2016, alleging an onset date of September 25, 2015.

16   It was noted that a prior application for benefits resulted in

17   an unfavorable Administrative Law Judge decision on

18   September 24, 2015, hence the onset date of September 25, 2015,

19   and the current application.  In support of his claim for

20   disability benefits, plaintiff claims disability based on

21   displacement of thoracic or lumbar intervertebral radiculopathy,

22   anxiety, depression, and a broken leg.  Administrative Law Judge

23   Robyn Hoffman conducted a hearing on August 24, 2018, to address

24   plaintiff's application for benefits.  ALJ Hoffman issued an

25   unfavorable decision on June 12, 2019.  That became a final

1    determination of the agency on May 22, 2020, when the Social

2    Security Administration Appeals Council denied plaintiff's

3    application for review.  This action was commenced on July 20,

4    2020, and is timely.

5            In her decision, ALJ Hoffman applied the familiar

6    five-step test for determining disability.  At step one, she

7    concluded that plaintiff had not engaged in substantial gainful

8    activity since September 25, 2015, through December 31, 2018,

9    which was the date on which he was last insured.

10           At step two, she concluded that the plaintiff does

11   suffer from severe impairments that impose more than minimal

12   limitations on his ability to perform basic work activities, and

13   specifically lumbar spine degenerative disc disease with

14   radiculopathy.

15           At step three, ALJ Hoffman concluded that plaintiff's

16   conditions do not meet or medically equal any of the listed

17   presumptively disabling conditions set forth in the

18   Commissioner's regulations, focusing on listing 1.04.  She noted

19   in rejecting that listing that the mere presence of evidence of

20   epidermal lipomatosis does not necessarily demonstrate nerve

21   compression.  The Administrative Law Judge next determined that

22   plaintiff retains the residual functional capacity

23   notwithstanding his conditions to perform less than a full range

24   of light work, and specifically lifting/carrying up to 25 pounds

25   occasionally, lift or carry up to 10 pounds frequently, stand or

1   walk for approximately seven hours total, and sit for up to five

2   hours total in an eight-hour workday with normal breaks.  There

3   were other postural limitations and no mental-related

4   limitations set forth in the RFC.

5              At step four, Administrative Law Judge Hoffman

6   concluded that plaintiff could not perform his past relevant

7   work as a warehouse worker.  She therefore went on to step five.

8              At step five, she noted initially that if plaintiff

9   could perform a full range of light work, a finding of no

10  disability would be required by the Medical-Vocational

11  Guidelines, or the so-called grids, and specifically Grid Rule

12  202.20.  Because of the additional limitations that were found

13  in the RFC, she concluded based on the testimony of a vocational

14  expert that plaintiff nonetheless can perform available work in

15  the national economy, citing three representative jobs of

16  classifier, router, and assembler/production.

17             As you know, the Court's function in this case is

18  limited and extremely deferential.  I must determine whether

19  correct legal principles were applied and the resulting

20  determination is supported by substantial evidence, defined as

21  such relevant evidence as a reasonable mind would find

22  sufficient to support a conclusion.  As the Second Circuit noted

23  in *Brault v. Social Security Administration Commissioner,* 683

24  F.3d 443 from 2012, the standard is demanding, more so than the

25  clearly erroneous standard.  The Court noted in *Brault* that once

1    there is a finding of fact, that fact can be rejected only if a

2    reasonable factfinder would have to conclude otherwise.

3          The plaintiff raises several contentions, some of

4    which are intertwined.  In his brief, he contends that improper

5    weight was given to medical opinions in the record, and

6    particularly the treating source opinion of Dr. Desai.

7    Secondly, he contends that he carried his burden of establishing

8    that his condition meets or medically equals, at step three,

9    listing 1.04.  He argues that the residual functional capacity

10   finding is unsupported and that the Administrative Law Judge

11   erred in evaluating his subjective complaints.  Plaintiff

12   believes there is sufficient evidence in the record to firmly

13   establish disability and therefore seeks remand with a directed

14   finding for purely a calculation of benefits.

15         In terms of medical opinions, when there are

16   conflicting medical opinions in the record, as is the case here,

17   in the first instance it is for the Administrative Law Judge to

18   weigh and determine the weight to be given on those, *Veino v.*

19   *Barnhart*, 312 F.3d 578, Second Circuit, 2002.  In this case, the

20   focus, of course, is on the physical components of plaintiff's

21   condition.  Speaking to that, Dr. Desai, plaintiff's treating

22   orthopedic surgeon, has given multiple opinions in the case.

23         On September 16, 2015 -- and this is at pages 489 and

24   490 of the Administrative Transcript -- he notes the current

25   diagnosis of lumbar radiculopathy and states no heavy lifting,

1    avoid repetitive bending, lifting, twisting, pushing, pulling,

2    frequent position change.  He also answers the question, is

3    plaintiff now able to work with reasonable -- I can't read my

4    own writing.  Well, essentially continuity, and the answer

5    stated is no.  And if so -- the question is, if so, when do you

6    think patient will be able to resume work.  The answer is,

7    "disabled."  Of course, those latter two are opinions on matters

8    reserved to the Commissioner.

9              On October 4, 2015, at pages 473 and 474, similarly

10   Dr. Desai opines no heavy lifting, avoid repetitive bending,

11   lifting, twisting, pushing, pulling, frequent position change.

12   He also indicates that plaintiff cannot return to either his

13   regular occupation or any occupation and that he is totally

14   disabled.  Significantly, when asked what is the patient's

15   current treatment program, the response is, "home exercises."

16             On July 10, 2018, at pages 518 through 520, Dr. Desai

17   responds in a primarily checkbox form with opinions that are

18   basically extremely debilitating to the plaintiff.  How many

19   city blocks can your patient walk or rest without severe pain,

20   zero.  How many hours can your patient sit at one time before

21   needing to get up, zero.  How many hours or minutes can the

22   plaintiff stand at one time before needing to sit down, zero.

23   In an eight-hour workday, the indication was plaintiff can sit

24   and stand/walk for less than two hours.  On page 519, a

25   statement is made, "unable to work," in response to two of the

1    questions.  When asked about lifting and carrying, Dr. Desai

2    said never for less than ten pounds.  Look down, never.  Turn

3    head left or right, never.  Look up, never.  Hold head in static

4    position, never.  Twist, stoop, crouch, climb ladders, climb

5    stairs, never, in contrast to the earlier two opinions.  And

6    hands:  Grasp, turn, twist objects, never.  Fingers:  Fine

7    manipulation, never.  Arms:  Reaching, overhead, never.

8            The Administrative Law Judge addressed these opinions

9    at page 27 of the Administrative Transcript and gave Dr. Desai's

10   opinions no weight.  Dr. Desai is a treating source and, of

11   course, because of when this application was filed, the former

12   regulations, and specifically 20 C.F.R. Section 404.1527

13   applies.  And under the former regulations, it would narrow the

14   opinion of a treating physician regarding the nature and

15   severity of an impairment as entitled to considerable deference

16   provided it is supported by medically acceptable clinical and

17   laboratory diagnostic tests and techniques, and is not

18   inconsistent with other substantial evidence, *Veino*, 312 F.3d at

19   588.  Such opinions are not controlling, however, if they are

20   contrary to other substantial evidence in the record, including

21   the opinions of other medical experts.  If more conflicts arise

22   in the form of contradictorily medical evidence, as I indicated

23   earlier, the resolution is properly entrusted to the

24   Commissioner.

25           The regulation does go on to say that if controlling

1   weight is not accorded to a treating source, the ALJ must apply

2   several factors to determine the degree of weight, if any, to be

3   assigned to the opinion, and those factors are spelled out in 20

4   C.F.R. Section 404.1527, and the Second Circuit will sometimes

5   refer to those loosely as the Burgess factors.  By the way, I do

6   not agree with plaintiff's assertion, to the extent that

7   assertion is made in the brief, that if the opinion of a

8   treating source -- it is improper to give zero weight to the

9   opinions of Dr. Desai.  I think it is within the ALJ's realm and

10  prerogative to give it no weight if the weight is properly

11  explained and is supported by substantial evidence.  In this --

12  and I also agree with the Commissioner that to the extent -- and

13  I'm not sure this is the case here, but to the extent that the

14  Burgess factors -- the regulatory factors are not specifically

15  all addressed per sé, if the Court makes a searching record

16  review and determines that the treating source opinion was

17  handled properly, then there's no need to remand, *Estrella v.*

18  *Berryhill,* 925 F.3d 90, Second Circuit, 2019.

19          In this case, Dr. Desai's opinions are given on a

20  checkbox form with little or no discussion, historically viewed

21  as fairly weak evidence.  It is extreme and although maybe

22  standing alone, the fact that an opinion is extreme might not

23  suffice under the cases cited by the plaintiff as a reason for

24  rejecting the opinion.  It is fair to say that it is

25  inconsistent with not only Dr. Desai's earlier opinions, his

SCOTT H. v. SOCIAL SECURITY                              12

1    treatment notes, and his prescription of home exercise, and so I

2    think that's a proper consideration.  As I said before, opinions

3    regarding disability is a matter reserved to the Commissioner.

4            The opinion is inconsistent with the interrogatory

5    responses from Dr. Chandrasekhar and to a degree with Dr.

6    Jenouri's findings.  I think it is not improper -- I understand

7    what plaintiff is saying, that Dr. Chandrasekhar did not examine

8    the plaintiff, but he had available to him every one of the

9    medical records associated with plaintiff's treatment and I

10   think it is proper to elevate the opinion of Dr. Chandrasekhar

11   over Dr. Desai, *Netter v. Astrue,* 272 F. App'x 54 from the

12   Second Circuit, 2008.

13           The test, as the Commissioner correctly argues, is

14   whether the treating source opinion is well supported and not

15   inconsistent with other substantial evidence.  Here, I find that

16   neither prong is met.  It is inconsistent with the treatment

17   notes, plaintiff's attempted work attempts, the fact that he is

18   engaged in some sort of home exercise program, and the fact that

19   he is receiving extremely conservative treatment consisting

20   primarily of over-the-counter medications, and did in fact

21   decline to undergo injections.  I think those are all proper

22   considerations.  *Tricarico v. Colvin*, 681 F. App'x 98 from the

23   Second Circuit, 2017, and *Ganoe v. Commissioner of Social*

24   *Security*, 2015 WL 9267442 from the Northern District of New York

25   on November 23, 2015.

1          So I believe that when the decision is read as a

2    whole, the treating source rule was not violated and that it was

3    proper to give no weight to Dr. Desai's extremely limiting

4    opinion.  Dr. Jenouri examined the plaintiff and provided a

5    medical opinion.  His report is at 399 to 402 of the

6    Administrative Transcript.  He opines moderate to marked

7    restriction in walking, standing, and sitting long periods,

8    bending, stair climbing, lifting, and carrying.  Clearly,

9    somewhat more restrictive than the residual functional capacity

10   finding, but less restrictive than Dr. Desai's opinions.  The

11   opinion of Dr. Jenouri is discussed at page 27 by the

12   Administrative Law Judge and given little weight.  There was no

13   direct -- I didn't see any direct challenge in plaintiff's brief

14   to the weight given.  It's folded into the step three argument

15   to some extent.  I think the Administrative Law Judge's

16   discussion of Dr. Jenouri's opinion could be more fulsome, but

17   when considering the record as a whole, including the ALJ's

18   discussion of the medical evidence which appears earlier,

19   including at page 26, I don't find any error.

20          Turning to the interrogatory responses of Dr.

21   Chandrasekhar, she gave interrogatory responses which appear at

22   pages 564 to 572 of the Administrative Transcript.  In many

23   respects it supports the residual functional capacity finding,

24   although the doctor in some respects found less limitation than

25   the residual functional capacity finding and, of course, under

1   *Matta*, the Second Circuit's decision, there's -- it is not

2   required that the residual functional capacity finding track any

3   one single medical opinion.  Dr. Chandrasekhar reviewed all of

4   the available records and appeared to testify and was cross

5   examined.  The opinion was discussed at page 27 of the

6   Administrative Law Judge's decision and given great weight.  The

7   ALJ, when faced with conflicting medical evidence, properly

8   exercised her discretion to afford more weight to Dr.

9   Chandrasekhar's opinions under *Veino* and I find no error in

10  weighing that opinion.

11          Turning to the step three argument, the focus is on

12  listing 1.04A.  That listing is met or equal with evidence of

13  nerve root compression characterized by neuro-anatomic

14  distribution of pain, limitation of motion of the spine, motor

15  loss (atrophy with associated muscle weakness or muscle

16  weakness) accompanied by sensory or reflex loss, and, if there

17  is involvement of the lower back, positive straight leg raising

18  test (sitting and supine).  The listing is discussed by

19  Administrative Law Judge Hoffman at page 25 of the transcript.

20  The burden, of course, of establishing that his condition meets

21  or equals any listing falls on the plaintiff and to satisfy a

22  listing, he must meet all of the criteria.  Dr. Chandrasekhar

23  made it clear that the mere presence of a prominent epidermal

24  lipomatosis without clinical studies and EMG or nerve root

25  conduction studies does not alone provide evidence of nerve

1    compromise.  I think it was proper to rely on that opinion.  I

2    also agree with the Commissioner that it's unclear that the

3    straight leg raising from both sitting and seated position --

4    I'm sorry, seated and supine positions can be met and certainly

5    over the durational requirement necessary, so I think rejection

6    of equivalence or equalling or meeting listing 1.04A is properly

7    explained and supported by substantial evidence.

8            The next issue is whether the residual functional

9    capacity is supported by substantial evidence.  An RFC

10   represents a range of tasks the plaintiff is capable of

11   performing notwithstanding his impairments, and ordinarily

12   represents the maximum ability to perform sustained work

13   activities in an ordinary setting on a regular and continuing

14   basis, meaning eight hours a day for five days a week or an

15   equivalent schedule.  An RFC, of course, is informed by

16   consideration of all relevant medical and other evidence and, to

17   be proper, must be supported by substantial evidence.  In this

18   case, the RFC is supported by Dr. Chandrasekhar's interrogatory

19   responses and we've already discussed why I believe the weight

20   given to those interrogatory responses was proper.  It is

21   sufficient to provide substantial evidence to support the RFC

22   finding.

23           The last issue raised is what we used to call

24   credibility, the analysis of the plaintiff's subjective

25   complaints.  Those complaints must be taken into account, of

1    course.  When examining the issue, though, an ALJ is not

2    required to blindly accept the subjective testimony of a

3    claimant, but instead retains the discretion to weigh the

4    credibility of the claimant's testimony in light of the other

5    evidence in the record, *Grenier v. Astrue*, 606 F.3d 46, Second

6    Circuit, 2010.

7            When analyzing the subjective claims of a plaintiff,

8    the ALJ must follow SSR 16-3p, which details factors to be

9    considered including daily activities, the location, duration,

10   frequency, and intensity of pain or other symptoms, and factors

11   that precipitate and aggravate the symptoms; the type, dosage,

12   effectiveness, and side effects of any medication an individual

13   takes or has taken to alleviate pain or other symptoms;

14   treatment other than the medication an individual receives or

15   has received for relief for pain or other symptoms; any measures

16   other than treatment an individual uses or has used to relieve

17   the pain or other symptoms; and any other factors concerning an

18   individual's functional limitations/restrictions due to pain or

19   other symptoms.

20           In this case, the Administrative Law Judge applied

21   the so-called two-step analysis to address the plaintiff's

22   subjective claims.  The analysis appears at page 26 and 27 of

23   the Administrative Transcript.  The ALJ explained her reasoning

24   and she based it on conservative treatment, Dr. Desai's

25   treatment notes, many of which show that he was stable and can

1    do most activities, at page 283, for example.  Treatment notes

2    also revealed little or no evidence of motor weakness.  They

3    revealed normal gait in many, if not most, instances and the

4    ability to walk on heels and toes.  She also relied on the

5    vocational assessment from December 14, 2014 -- that appears at

6    497 to 500 of the Administrative Transcript -- by Jacqueline

7    Oberman, a Senior Rehabilitation Specialist.

8              I agree with plaintiff's counsel that she is not an

9    acceptable medical source, but under 20 C.F.R. Section 404.1527,

10   subsection F, the opinion is still entitled to some

11   consideration.  In that opinion, it reports that Mr. H████ took

12   part in a functional capacity evaluation that occurred on

13   September 26, 2014, revealing he was able to sit for 30 minutes

14   maximum, stand for 30 minutes maximum, walk for one mile

15   continuously, lift 50 pounds maximum occasionally, 25 pounds

16   maximum frequently, and 10 pounds maximum continuously.  He was

17   able to carry a maximum of 40 pounds occasionally.  He had a

18   pushing/pulling capacity of 60 pounds.  He had difficulty

19   bending at the waist, but could climb down and up one flight of

20   stairs, kneel, crouch, crawl slowly, and reach in all directions

21   with both arms.  He was found able to work in a medium-strength

22   category.  He was restricted from pushing or pulling more than

23   60 pounds, balancing activities that require crouching and

24   stooping.  That provided a proper basis, as well as the other

25   factors just mentioned, for the Administrative Law Judge to

1    reject plaintiff's claim of debilitating pain.

2            So I find no error in the Administrative Law Judge's

3    analysis of plaintiff's subjective complaints.  In conclusion, I

4    find that correct legal principles were applied and substantial

5    evidence supports the Administrative Law Judge's determination

6    and will therefore grant judgment on the pleadings to the

7    defendant and order dismissal of plaintiff's complaint.

8            Thank you both.  Have a good afternoon.

9            MR. GOLDSTEIN:  Thank you, your Honor.

10           MR. BOLEN:  Thank you.

11           (Time noted:  3:08 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1

 2

 3

 4                 CERTIFICATE OF OFFICIAL REPORTER

 5

 6

 7          I, HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR,

 8  NYRCR, Official U.S. Court Reporter, in and for the United

 9  States District Court for the Northern District of New York, DO

10  HEREBY CERTIFY that pursuant to Section 753, Title 28, United

11  States Code, that the foregoing is a true and correct transcript

12  of the stenographically reported proceedings held in the

13  above-entitled matter and that the transcript page format is in

14  conformance with the regulations of the Judicial Conference of

15  the United States.

16

17          Dated this 18th day of October, 2021.

18

19          s/ Hannah F. Cavanaugh_____

20          HANNAH F. CAVANAUGH, RPR, CRR, CSR, NYACR, NYRCR

21          Official U.S. Court Reporter

22

23

24

25
```